IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WARREN WILLIAMS,

                Plaintiff,

v.

DANE CTY. NARCOTICS TASK, CITY OF
MADISON POLICE DEP'T, DETECTIVE SELTZNER,    OPINION and ORDER
POLICE OFFICER WEBERPAL, SGT. MATT
SCHROEDI, DETECTIVE NORDQUIST,    20-cv-957-wmc[1]
DETECTIVE REITMEIER, SGT. OLSEN, DETECTIVE
NIELSEN, DETECTIVE GARDNER, SPECIAL
AGENT PRIERE, POLICE OFFICER MYER, and
DEPUTY SIMPSON,

                Defendants.

---

    Plaintiff Warren Williams, appearing pro se, was detained at the Dane County Jail when he filed this case. Williams alleges that defendants used excessive force and illegally seized him and searched his property. The court granted Williams leave to proceed in forma pauperis and he has paid the initial partial filing fee as the court directed. The court also granted Williams leave to file an amended complaint, which supplements the original complaint.

    Because Williams proceeds in forma pauperis and was incarcerated when he filed this case, I must screen the complaint under 28 U.S.C. § 1915A(e)(2)(B) and 1915A. I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. In doing so, I must accept the complaint's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th

---

[1] I am exercising jurisdiction over this case for the purposes of this screening order only.

Cir. 2011). Applying this standard, I will allow the case to proceed on Williams's claims of excessive force, failure to intervene, and conspiracy under 42 U.S.C. § 1983. I will also allow this case to proceed on Williams's claim that defendant Reitmeier illegally searched his cellphone. But, due to various pleading deficiencies, I will dismiss Williams's other claims.

ALLEGATIONS OF FACT

Williams alleges the following facts, which I accept as true to screen the complaint.

Defendants Reitmeier and Schroedi sought to arrest Williams for delivering cocaine base to an undercover officer. Because Reitmeier did not have a warrant or probable cause to arrest Williams, he obtained a probation hold. Reitmeier held a briefing in which he told defendant Dane County Narcotics Task Force and defendant City of Madison Police Department that Williams would attempt to elude arrest based on prior convictions for reckless driving and eluding.

While Williams was stopped at a red light, defendants Seltzner and Weberpal approached his vehicle. Weberpal held a gun to Williams's head and Seltzner pointed a gun at him. Weberpal then snatched Williams from the car and slammed him on the ground stomach first. Weberpal sat on Williams's back and choked him, preventing him from breathing. Defendant Nordquist painfully kneeled on his upper back. Defendant Schroedi punched his lower back multiple times, then dragged him by his feet to a grassy median. Williams lay face down and did not resist arrest or handcuffing during these uses of force. Defendants Seltzner, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson stood by idly as Weberpal, Nordquist, and Schroedi used force on Williams.

Reitmeier illegally searched Williams's password-protected phone and seized information from it. Also, unspecified law enforcement officers illegally searched Williams's girlfriend's house because the search went beyond the only area of the house that Williams had possession or control over. Williams adds that unnamed law enforcement officers illegally searched the trunk and glove compartment of his car.

Williams contends: "[I] was found not guilty or should I say charges for resisting arrest, and the 3 delivery charges [were] dismissed." Dkt. 11, at 4. Publicly available records from Dane County Case No. 2019CR002749 show that he pleaded guilty to possession of cocaine with intent to distribute and that the other charges were dismissed on the prosecutor's motion. *C.f. Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) (federal courts may take judicial notice of related state court proceedings).

Williams's statement of his causes of action is not perfectly clear. But giving Williams the benefit of the doubt, I construe the complaint to allege a violation a Fourth Amendment based on theories of excessive force, illegal search and seizure, and failure to intervene, along with violations of the Due Process Clause and Eighth Amendment. Williams also asserts claims under 42 U.S.C. § 1983, 1985, and 1986 based on an alleged conspiracy to violate his civil rights. He sues defendants in their individual and official capacities and seeks damages and declaratory relief.

ANALYSIS

**A. Excessive force**

Courts analyze claims that police officers have used excessive force during arrests under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386,

3

395 (1989). Whether an officer's use of force is reasonable depends on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "[G]un pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009).

Here, because Williams alleges that he did not present a danger to Seltzner and Weberpal when they approached his car, he has adequately alleged that their pointing a gun at him was unreasonable. Williams also alleges that: (1) Weberpal slammed and choked him; (2) Nordquist painfully kneeled on his upper back; and (3) Schroedi punched him several times then dragged him by his feet while handcuffed. Williams adds that, during these uses of force, he lay flat and did not resist arrest or handcuffing. He has adequately alleged that these additional uses of force were unreasonable. I will allow him to proceed on an excessive force claim against Seltzer, Weberpal, Nordquist, and Schroedi.

**B. Failure to intervene**

A police officer can be liable for another officer's excessive force if the officer had a realistic opportunity to intervene and stop the first officer's actions. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Id.*

Here, Williams alleges that, as Weberpal, Nordquist, Schroedi used excessive force on him, Seltzner, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson stood by idly. Williams's description of this incident suggests that the onlooking officers would have had a realistic opportunity to warn Weberpal, Nordquist, or Schroedi to stop. I will allow Williams's

failure-to-intervene claim to proceed against Seltzner, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson.

**C. Illegal search and seizure**

Williams contends that Reitmeier did not have a warrant or probable cause to arrest him and, instead, obtained a probation hold. He adds that there was no probable cause affidavit or judicial determination of probable cause in his case.

Individuals on probation are not entitled to the full protections of the Fourth Amendment accorded to free citizens. *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). At most, a reasonable suspicion that a probationer has violated his probation is necessary for his seizure to satisfy the Fourth Amendment. *See Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003); *see also United States v. Knights*, 534 U.S. 112, 122 (2001) (warrantless search of probationer's home based on reasonable suspicion satisfied Fourth Amendment); *Samson v. California*, 547 U.S. 843, 857 (2006) (Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee).

Here, Williams's allegations do not support a reasonable inference that defendants lacked a reasonable suspicion that he had violated his probation. Williams alleges that Reitmeier believed that he had delivered cocaine base to an undercover officer, and Williams has not alleged that Reitmeier lacked a factual basis for this determination. Williams does not allege that he was not involved in narcotics activity. Also, Williams pleaded guilty to a drug offense following his seizure. At best, Williams has pleaded facts that "are merely consistent with" the contention that defendants' lacked a reasonable suspicion that he violated his probation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, his allegations "stop[] short

of the line between possibility and plausibility of entitlement to relief." *Id.* I will not allow this claim to proceed.

Williams alleges that his arrest was unlawful because there was no probable cause affidavit or judicial determination of probable cause in his case. But, as discussed, his allegations do not support a reasonable inference that defendants needed probable cause to seize him. Also, Williams's allegation that defendants lacked probable cause to arrest him is conclusory; he does not reasonably explain why this was so. And his allegations fail to support a reasonable inference that any defendant was responsible for his supposed failure to receive a judicial determination of probable cause. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation). I will not allow this claim to proceed.

Williams alleges that unnamed law enforcement agents illegally searched his girlfriend's house and the trunk and glove compartment of his car. But Williams does not identify which defendant, if any, was responsible for these allegedly illegal searches. I will not allow these claims to proceed. *See Colbert*, 851 F.3d at 657.

Williams alleges that Reitmeier searched his password-protected phone and seized information from it without a warrant. A "warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Riley v. California*, 573 U.S. 373, 401 (2014). Williams's status as a probationer would not necessarily stop this rule from applying. *See United States v. Wood*, 16 F.4th 529, 536–37 (7th Cir. 2021). Also, Williams does not allege that Reitmeier searched his phone because Reitmeier believed that it would contain evidence of a probation violation. This contrasts with Williams's allegations about his seizure, which

6

suggest that defendants seized Williams because they believed he violated his probation. I will allow this claim to proceed.

## D. Due Process Clause and Eighth Amendment

Williams alleges that defendants illegally seized him and searched property. His allegations do not suggest that he was a pretrial detainee at this time. The Fourth Amendment, not the Due Process Clause, governs these claims. *See Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019); *Martin v. Marinez*, 934 F.3d 594, 598–99 (7th Cir. 2019). The Eighth Amendment does not apply because Williams was not a convicted prisoner when the underlying events allegedly occurred. *Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003). I will not allow Williams to proceed on these claims.

## E. Conspiracy

To establish a § 1983 conspiracy claim, Williams must show an underlying constitutional violation and that defendants agreed to inflict that violation. *See Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).

Here, Williams has adequately alleged that certain defendants used excessive force on him and that the other defendants failed to intervene. Generously construing the complaint, Williams further alleges that: (1) Reitmeier held a meeting in which he told the other defendants that Williams would elude arrest because of his criminal history; and (2) defendants agreed to use force on him at this meeting. So I will allow Williams to proceed on his § 1983 conspiracy claim.

Section 1985(1) applies "only to a conspiracy to lawfully affect the official duties of a federal official." *Friedman v. Vill. of Skokie*, 763 F.2d 236, 238 (7th Cir. 1985). Williams's allegations do not implicate this provision. The first part of § 1985(2) applies to conspiracies

to obstruct justice or intimidate a juror or witness in federal court. *See Kush v. Rutledge*, 460 U.S. 719, 722, 724 (1983). Williams's allegations do not implicate this part. The second part of § 1985(2) and first part of § 1985(3) require "the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Id.* at 725. This "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 726. Williams does not so allege. The last part of § 1985(3) involves "the right to support candidates in federal elections." *Id.* at 724. So I will not allow the case to proceed on a § 1985 conspiracy claim. This disposition dooms Williams's § 1986 conspiracy claim because § 1986 liability derives from § 1985 liability. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985).

**F.  Official-capacity claims and declaratory relief**

In addition to his individual-capacity claims, Williams sues defendants in their official capacities. The Eleventh Amendment bars lawsuits against state officials for money damages. *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993). So Williams's official-capacity claims for damages are not viable. Williams's release from prison moots his request for declaratory relief. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). I will not allow him to proceed on these claims.

**G.  Improper defendants**

I must dismiss the Dane County Narcotics Task Force and the City of Madison Police Department as defendants because they do not have the legal capacity to be sued under § 1983. *See Best v. City of Portland*, 554 F.3d 698, 698 n.1 (7th Cir. 2009); *Pressley v. City of S. Milwaukee*, No. 21-CV-148-PP, 2022 WL 3603556, at *17 (E.D. Wis. Aug. 23, 2022); *Morrison v. Brown Cty. Jail*, No. 21-CV-1436-PP, 2022 WL 1203042, at *2 (E.D. Wis. Apr. 22, 2022). Because

Williams cannot sue these defendants under § 1983, I cannot allow him to proceed on his claims that they had an unlawful policy or custom that caused the alleged constitutional violations.

ORDER

IT IS ORDERED that:

1. Plaintiff is GRANTED leave to proceed on his Fourth Amendment excessive force claim against defendants against Seltnzer, Weberpal, Nordquist, and Schroedi in their individual capacities.

2. Plaintiff is GRANTED leave to proceed on his Fourth Amendment failure-to-protect claim against defendants Seltzner, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson in their individual capacities.

3. Plaintiff is GRANTED leave to proceed on his Fourth Amendment illegal search claim against defendant Reitmeier in his individual capacity. Except as provided in paragraphs 1–3 of this order, plaintiff's other Fourth Amendment claims for illegal search or seizure are DISMISSED.

4. Plaintiff is GRANTED leave to proceed on his § 1983 conspiracy claim against defendants Weberpal, Nordquist, Schroedi, Seltzner, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson in their individual capacities. Plaintiff's § 1985 and § 1986 conspiracy claims are DISMISSED.

5. Plaintiff's claims under the Due Process Clause and Eighth Amendment are DISMISSED.

6. Plaintiff's official-capacity claims and request for declaratory relief are DISMISSED.

7. Dane County Narcotics Task Force and City of Madison Police Department are REMOVED as defendants.

8. The clerk of court is directed to ensure that the United States Marshals Service serve defendants Seltzner, Weberpal, Nordquist, Schroedi, Reitmeier, Olsen, Nielsen, Gardner, Priere, Myer, and Simpson with a copy of plaintiff's complaint, amended complaint, and this order. Plaintiff should not attempt to serve defendants on his own at this time.

9. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly

rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

10. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

11. If plaintiff moves while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendant or the court are unable to locate him, his claim may be dismissed for his failure to prosecute it.

Entered September 6, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge